1
2
3
4
UNITED STATES DISTRICT COURT
5
NORTHERN DISTRICT OF CALIFORNIA
6
EUREKA DIVISION
7

8    MIRANDA DAIRY, et al.,                        Case No. 18-cv-06357-RMI
9              Plaintiffs,
10        v.                                        **ORDER**
                                                    Re: Dkt. No. 17
11   HARRY SHELTON LIVESTOCK, LLC, et
     al.,
12
               Defendants.
13

14        Pending before the court is Defendants' Motion to Dismiss (dkt. 17), Plaintiffs' Response

15   (dkt. 23), Defendants' Reply (dkt. 24), Plaintiffs' Sur-Reply (dkt. 37), and Defendants' Sur-Sur-

16   Reply (dkt. 36). For the following reasons, the court will deny Defendants' Motion.

17                                    **INTRODUCTION**

18        On October 17, 2018, Plaintiffs filed a complaint through which they claimed breach of

19   contract, fraud, and negligence. *See Compl*. (dkt.1) at 10-13. Plaintiffs are a California Partnership

20   (Miranda Dairy) whose partners (Tim and Dorice Miranda) are residents of Texas, as well as a

21   Texas company (Grand Canyon Dairy, LLC); Defendants are a Tennessee company (Harry

22   Shelton Livestock, LLC) ("Shelton Livestock"), and an individual resident of Tennessee (Harry

23   Shelton). *Id*. at 2. The Complaint alleges that Defendant Shelton Livestock breached the Parties'

24   verbal agreement wherein Plaintiffs and Defendant would exchange dairy cattle such that they

25   could be raised in a specified fashion by Defendant in Tennessee, and then sent to Plaintiffs'

26   organic dairy farms in California and Texas. *Id.* at 3-10. Plaintiffs claim that as a result of

27
28

Defendant's breach, as well as fraud[1] and negligence, diseased cattle were introduced into Plaintiffs' herds in California, causing widespread damage. *Id*. at 10-14.

**Defendants' Principal Arguments and Evidence**

*Defendants' Motion to Dismiss:*

Defendants' Motion to Dismiss presents the following three arguments: (1) that the court does not have personal jurisdiction over Defendants; (2) that Plaintiffs' breach of contract claim is barred by the statute of limitations; and, (3) that Plaintiffs fail to state claims for fraud and negligence because they do not allege breaches of any duty separate from the alleged breaches of the oral contract. *Defs.' Mot.* (dkt. 17) at 10. In support of these arguments, Defendants submit an affidavit from Harry Shelton, as well as an Exhibit, consisting of a number of copies of a form entitled, "Tennessee Certificate of Veterinary Inspection." *See Shelton Decl.* (dkt. 17-1); and *Ex. A* (dkt. 17-2).

*The Harry Shelton Declaration and Exhibit:*

Defendant Harry Shelton ("Shelton") declares that he is a named defendant in this action, and that he is the sole manager of the other named Defendant, Shelton Livestock. *Shelton Decl.* (dkt. 17-1) at 1. Describing the contours of the verbal agreement between his company and Plaintiff Miranda Dairy, Shelton states that Miranda Dairy was to ship cattle to Shelton's farm in Tennessee where they would be impregnated by Shelton's bulls, and that the cattle were to be thereafter shipped by Shelton to Miranda's Texas operation. *Id*. at 2. According to Shelton, at no time did he ever ship cattle to California, or enter into a contract in California, and the verbal agreement at the heart of this case only required Shelton to ship Miranda Dairy's impregnated cattle to Texas. *Id*. Shelton's affidavit also states that if "Miranda or other plaintiffs arranged to transfer the cattle from Texas to California, Shelton had no input in, or control over such a decision and/or action." *Id*. Finally, Defendants provide a number of Tennessee veterinary inspection forms indicating a number of cattle shipments from Tennessee to Texas. *Shelton Decl. Ex. A* (dkt. 17-2).

---

[1] Defendant Harry Shelton is named in his individual capacity only in the fraud count. *See Compl.* (dkt. 1) at 13-13.

**Plaintiffs' Principal Responsive Arguments and Evidence**

Plaintiffs respond to Defendants' jurisdictional argument by suggesting that the court can exercise personal jurisdiction because Defendants have purposefully directed activities at California and availed themselves of the privilege of doing business here; that Defendants' forum-related activities are directly related to and arise from the subject of the lawsuit; and, consequently, that the exercise of personal jurisdiction would be reasonable. *Pls.' Resp. Opp'n* (dkt. 23) at 10. Second, contending that Defendants' reliance on a two-year statute of limitations is misplaced, Plaintiffs submit that because the agreement between the Parties was for the sale of goods, the applicable statute of limitations on such a contract is four years, not two years. *Id*. at 19. Third, Plaintiffs argue that the economic loss rule does not bar the fraud and negligence claims because Shelton made affirmative misrepresentations about raising cattle organically (during the contract formation period), and also because Shelton made "fraudulent omissions" by failing to notify Plaintiffs that his heifers were diseased (causing higher damages than could have been contemplated under the Parties' contractual expectations). *Id*. at 20-21. In support of these arguments, Plaintiffs submit four declarations and a number of exhibits.

*The Tim Miranda Declaration and Exhibits:*

Tim Miranda ("Miranda") states that he is a dairy farmer, and that along with his wife, Dorise, and their three children, they operate Grand Canyon Dairy in Dublin, Texas, and Miranda Dairy in Ferndale, California. *T. Miranda Decl.* (dkt. 23-1) at 2. Both of Miranda's dairy farms are certified as 'organic' pursuant to state and federal regulations. *Id*. In the Spring of 2016, with the assistance of an intermediary named Jean Taylor Bybee ("Bybee"), Miranda conducted a cash transaction for organic bred heifers with Shelton; those cattle were transported between Texas and Tennessee. *Id*. at 3. Miranda declares that further discussions, also in 2016, contemplated the exchange of heifers between Shelton's farm in Tennessee, and Miranda's Texas and California dairy farms. *Id*. Pursuant to these discussions, in October of 2016, Bybee arranged for Miranda Dairy to purchase 105 of Shelton's bred heifers, and for them to be shipped to Miranda's farm in Ferndale, California. *Id*. During that same month, Miranda states that he and Shelton had several discussions regarding the first shipment of bred heifers to California, and the consequential return

3

shipment of other cattle from California to Tennessee. *Id*. Miranda adds that some of these discussions, involving Dorice Miranda and Bybee, were conducted via text messaging, some of which were attached as an Exhibit to the Miranda Declaration. *Id*. Those texts indicate that Bybee seemed to think that Shelton was aware that an October 2016 shipment of cattle was destined for California. *Id*. at 9-10.

Miranda stated that in late October of 2016, Bybee and Shelton selected three truckloads of heifers raised by Shelton on his farm in Tennessee to go to California, and that when the truckloads arrived, Miranda was personally present in Ferndale to unload the bred heifers and to reload the trucks with heifer calves for a return journey to Tennessee, where they could be raised 'organic' and eventually shipped to Miranda's farms in California and Texas. *Id*. at 3-4. Miranda adds that the three truckloads of cattle appeared to be in good condition. *Id*. However, after these heifers began to calve and enter the milk herd, Miranda discovered that Shelton's heifers were diseased and unfit for organic milk production in California. *Id*. Lastly, Miranda alleges that Shelton deceived him as to the health and overall condition of the heifers that were introduced into Miranda's dairy herd. *Id*.

*The Dorice Miranda Declaration:*

Dorice Miranda ("Dorice") submitted a declaration that relates substantially the same narrative as was presented by Miranda; however, Dorice adds that she traveled to Tennessee in 2016 to meet with Shelton and to assist him with obtaining organic certification. *D. Miranda Decl.* (dkt. 23-3) at 2-3. Dorice states that during her and her husband's visit to Shelton's farm, "Shelton represented that he had operated the farms for many years and he signed affidavits certifying that the farms had had no pesticides, (sic) fertilizer applied for at least three years . . . [and] that he would feed the cattle only organic feed - as that term is defined by federal regulations." *Id*. at 3. Dorice added that it was clear that the arrangement between the Mirandas and Shelton was for Shelton to raise organic-certified heifers for use on the Mirandas' dairy farms in California and Texas. *Id*.

*The J.T. Bybee Declaration:*

Bybee works as an "order buyer" in the dairy cattle industry, bringing together buyers and

sellers. *Bybee Decl.* (dkt. 23-2) at 2. Bybee states that he introduced Miranda to Shelton in 2016, and that he was present when Shelton and Miranda discussed an arrangement wherein Miranda would purchase bred dairy heifers from Shelton in Tennessee for shipment to Miranda's dairy farms in Texas and California. *Id.* at 2-3. Bybee also states that the arrangement included return shipments where Miranda would ship heifer calves to Tennessee for Shelton to feed and raise such that they could be eventually sold back to Miranda for dairy production. *Id.* at 3. Bybee then states that, as part of this arrangement, in October of 2016, Bybee "arranged to ship three loads of springing dairy heifers for Harry Shelton to Ferndale, California." *Id.* With Shelton's knowledge and approval, Bybee states that he located three trucks, one of which was driven by Richard Slater, to haul this load of cattle from Tennessee to California, as well as to bring back the return haul of heifer calves from California to Tennessee. *Id.* Lastly, Bybee adds that, as to the logistics of transporting the three loads of cattle from Tennessee, "Harry [Shelton], Richard Slater and I discussed the plan to deliver the cattle to California." *Id.*

<u>*The Richard Slater Declaration*</u>:

Slater is the owner of Slater Trucking, and has been occupied as a livestock trucker since 1995. *Slater Decl.* (dkt. 23-4) at 2. In late October of 2016, at Bybee's request, Slater and two other livestock truckers arrived at Shelton's property in Tennessee to pick up three loads of bred dairy heifers bound for Ferndale, California, followed with a return load of California dairy cattle to be loaded and brought back to Tennessee. *Id.* at 2-3. Slater states that during the loading, "I spoke with Shelton who wanted to know how we would get the cattle to California. I told Shelton that if they looked good along the way, we would rest them at Cheyenne, Wyoming. Shelton agreed to my Plan." *Id.* at 3. Slater adds that he and the other two drivers transported Shelton's cattle to Miranda's dairy farm in Ferndale, California, arriving on October 27, 2016, followed by transporting a return load of heifer calves to Shelton, and arriving back in Tennessee on October 31, 2016. *Id.* at 3-4. Slater's declaration also included two attachments consisting of the invoices produced by Slater Trucking to Shelton and Miranda for the transport of cattle each way. *Id.* at 5-8.

\\

### The Reply, Sur-Reply, and Sur-Sur-Reply Briefs

Thereafter, Defendants' filed a Reply Brief in which they present several arguments. *See Defs.' Reply* (dkt. 24) at 2. First, Defendants argue that Plaintiffs' submitted declarations should be disregarded because they do not substantially comply with 28 U.S.C. § 1746; because the Bybee and Slater Declarations "contain hand-written alterations that are unsigned"; and, because the Tim Miranda Declaration states that Miranda Dairy keeps certain records while not attaching them to the declaration. *Id*. at 5. Defendants also argue that the invoices attached to the Slater Declaration should be deemed "inadmissible and/or irrelevant" because one bears the name of "a Sheldon farms which is an unknown entity not named in this lawsuit." *Id.* at 6. Second, Defendants reiterate that they have "never shipped any cattle to California," that all of the conduct of which Plaintiffs have complained occurred in Tennessee, and that Defendants have had no contacts with California that would justify the exercise of personal jurisdiction. *Id*. at 8-10. After taking issue with Plaintiffs' characterization of their arguments regarding the issue of personal jurisdiction, Defendants submit that it would be unreasonable to exercise personal jurisdiction under the circumstances. *Id*. 10-14. Third, Defendants contend that the verbal agreement described in Plaintiffs' Complaint was not for the sale of goods, but for the performance of services, namely, Shelton raising and impregnating cattle for Miranda; thus, Defendants argue that a two-year statute of limitations is applicable. *Id*. at 14-15. Lastly, Defendants reiterate that Plaintiffs should not be allowed to seek recovery for both breach of contract and related tort damages because "[t]here is no separate fraud in this case, only the claim by Shelton that the cattle were, in fact, raised organic . . . there is no overt, separate fraud whereby Shelton is alleged to have covered up the condition of the cattle." *Id*. at 15-16.

Plaintiffs thereafter sought leave of court to file a sur-reply (dkt. 27), which was followed by Defendants' response in opposition (dkt. 30) which included a request to file a sur-sur-reply; the court granted both requests (dkt. 35). Plaintiffs' Sur-Reply begins by arguing that the submitted declarations substantially complied with § 1746, and the handwritten alteration in the Bybee Declaration is such that the court could still consider the declaration while allowing for a corrected declaration to be submitted. *Pls.' Sur-Reply* (dkt. 37) at 3. Plaintiffs note that the

submitted declarations, if considered, demonstrate that Defendants caused cattle to be shipped from Tennessee to California, that the damage resulting from the allegations in the Complaint occurred in California, and that the "bulk of the evidence is outside of Tennessee." *Id.* 3-5. Plaintiffs add that the contract at the heart of this case was for the sale of goods because "the complaint clearly states that cattle were bought and sold." *Id.* at 4.

Defendants' Sur-Sur-Reply reiterates that Plaintiffs' declarations do not substantially comply with § 1746. *Defs.' Sur-Sur-Reply* (dkt. 36) at 2-3. Noting that while the livestock trucker's invoice that was attached to the Slater Declaration was objectionable because it listed "Sheldon Farms" instead of "Harry Shelton Livestock, LLC," Defendants reiterate that they, on the other hand, have provided "over 100 pages of documentary evidence from Shelton that show that Shelton shipped the cattle to Texas [on certain occasions] and not California." *Id.* at 3. Defendants also reiterate that the reasonableness factors weigh against the exercise of personal jurisdiction. *Id.* at 3-6.

## DISCUSSION

Defendants' Motion to Dismiss presents three issues by arguing that personal jurisdiction is lacking, that the breach of contract claim is barred by the statute of limitations, and that the fraud and negligence claims represent two impermissible attempts to recast the breach of contract as a tort. *See generally Defs.' Mot.* (dkt. 17). Defendants' Reply Brief adds a fourth argument, suggesting that Plaintiffs' declarations, filed in response to the Motion to Dismiss, do not substantially comply with 28 U.S.C. § 1746, as well as alleging a series of other defects in the Slater and Bybee Declarations. *Defs.' Reply* (dkt. 24) at 4-7.

### Defendants' Objections to Plaintiffs' Declarations and Exhibits

Defendants take issue with the form of each of the four declarations submitted by Plaintiffs because the perjury statement and signature lines are situated on separate pages, arguing that this constitutes a failure to substantially comply with 28 U.S.C. § 1746. *See Defs.' Reply* (dkt. 24) at 5. Additionally, Defendants contend that "hand-written cross-outs and replacements" appearing in the Slater and Bybee Declarations render those accounts "highly suspect." *Id.* As to one of the receipts attached to the Slater Declaration, Defendants take issue with the appearance of "Sheldon"

7

Farms," rather than "Shelton." *Id.* at 6. Lastly, Defendants urge against reliance on Plaintiffs' declarations, suggesting that they are self-serving, and that documentary evidence would be superior. *Id.* at 6-7.

In support of the argument that 28 U.S.C. § 1746 unflinchingly requires the perjury statement and the declarant's signature to appear on the same page, Defendants cite an unpublished order, deciding a summary judgment motion in a *pro se* prisoner civil rights case, from the Northern District of Illinois. Defendants argue that the decision in *Knights v. Williams*, 2005 U.S. Dist. LEXIS 15526 at *8 (N.D. Ill. 2005), involved the rejection of a declaration because the signature line and perjury statement were on different pages, and that the reasoning in that case should compel the same result here. However, *Knights* is easily distinguishable because it involved a declaration that had two signature lines, one was for the purpose of acknowledging the perjury statement, and another was for the purpose of attesting to the recited facts, both were on the same page. *See id.* In *Knights*, the declarant had signed the block that signified he attested to the facts, but had not signed the block confirming that the attestation was under penalty of perjury. *Id.* On this basis, the court in *Knights* found that because "the signer executed the document but specifically abjured from signing the portion of the document on the same page that would subject him to penalties for perjury for any false statement(s)," the declaration was not substantially compliant with the statutory requirements expressed in § 1746. In declining to strike other declarations involved in the case, the court in *Knights* noted that "[t]he Seventh Circuit teaches that a court is not to be 'unnecessarily hyper-technical and overly harsh on a party who unintentionally fails to make certain that all technical, non-substantive requirements of execution [of an affidavit] are satisfied.'" *Knights*, 2005 U.S. Dist. LEXIS 15526 at *8 (quoting *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985)).

For declarations executed within the United States, § 1746(2) requires a perjury statement "in substantially" the following form: "I declare under penalty of perjury that the foregoing is true and correct." By its own express terms, the statute only requires substantial compliance with what the Court of Appeals has characterized as its "suggested language." *See CFTC v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1112 (9th Cir. 1999). Thus, courts have been reluctant to enforce strict

compliance with the suggested statutory language. *See Schroeder v. McDonald*, 55 F.3d 454, 460 n. 10 (9th Cir. 1995) (excusing a failure to "follow § 1746's form with precision"); *Soto v. Castlerock Farming & Transp., Inc.*, 2011 U.S. Dist. LEXIS 73652, 2011 WL 2680839, at *4, n. 6 (E.D. Cal. July 8, 2011) (overruling an objection to a declaration even though the declaration did not include the phrase "under penalty of perjury"); *Vlasich v. Nareddy*, No. 1:13-cv-00326-LJO-EPG (PC), 2017 U.S. Dist. LEXIS 117119, at *53 (E.D. Cal. July 25, 2017) (excusing the failure to even include the words, "the following is true and correct," because "it appears that Mr. Avila implied that his statements were true and correct."); *Matsuda v. Wada*, 101 F. Supp. 2d 1315, 1322 (D. Haw. 1999) (excusing the failure to include the words "under the laws of the United States of America"); *James River Holdings Corp. v. Anton*, 2014 U.S. Dist. LEXIS 200010, at *7-8, 2014 WL 12696367, at *3 (C.D. Cal. Jan. 17, 2014) (same); *see also Kersting v. United States*, 865 F. Supp. 669, 676 (D. Haw. 1994) (holding that "as long as an unsworn declaration contains the phrase 'under penalty of perjury' and states that the document is true, the verification requirements of 28 U.S.C. § 1746 are satisfied").

Based on this authority, it is clear that § 1746's "suggested language" is merely intended to ensure that declarations are attested to be true and correct under penalty of perjury. Furthermore, the statute expresses no fixed requirement that the perjury statement and the declarant's signature must absolutely appear on the same page. Plaintiffs' declarations contain signature lines at the end, and the perjury statement at the beginning, declaring that the "following," rather than "foregoing," are true and correct under penalty of perjury. *See Tim Miranda Decl.* (dkt. 23-1) at 2; *Bybee Decl.* (dkt. 23-2) at 2; *Dorice Miranda Decl.* (dkt. 23-3) at 2; and, *Slater Decl.* (dkt. 23-4) at 2. "Perhaps [Defendants] take[] issue with the fact that the body of the declaration separates the assertion that the declaration is made under penalty of perjury and the signature," but the Court finds these declarations are "'in substantially' the same form as the example in section 1746." *Ameranth, Inc. v. Genesis Gaming Sols., Inc.*, 2015 WL 10791913, at *1 (C.D. Cal. Jan. 2, 2015) ("The first line of the declaration states, 'The undersigned hereby declares under penalty of perjury, that the following is true and correct: . . .' [] The declaration finishes with the date and Lewis's signature. This satisfies the requirements of 28 U.S.C. § 1746."); *see also Barclay v. First Nat'l Bank of*

*Talladega*, 2016 U.S. Dist. LEXIS 42983, at *6-7 (N.D. Ala. Mar. 31, 2016) (holding "[t]hat Barclay's affirmation states that the following is true rather than that the foregoing is true is immaterial" because the statute contains no requirement that "that a declaration conclude with the declarant's affirmation," and that in any event, the statute expressly only requires substantial compliance with its suggested language). Accordingly, the court finds Defendants' argument that Plaintiffs' declarations do not substantially comply with § 1746 to be unpersuasive.

Likewise, the court is unpersuaded by Defendants' suggestion that the Bybee and Slater declarations are rendered "highly suspect" due to the appearance of "hand-written alterations that are unsigned by the declarant." *Defs. Reply* (dkt. 24) at 5. The Slater Declaration contained two hand-written alterations, appearing on the same page as the signature page, correcting an invoice number from "0631" to "0361" for one of the attached invoices (which was in fact, invoice no. 0361). *Slater Decl.* (dkt. 23-4) at 4, 8. The Bybee Declaration contained a cross-out that corrected the statement pertaining to when Bybee and Shelton first met, correcting it from 2015 to 2016. *Bybee Decl.* (dkt. 23-2) at 2. Because Defendants have not explained *how* or *why* these corrections render the declarations "highly suspect," and because the corrections appear to be benign and clerical in nature, as well as being non-germane to the issues at hand, the court finds that there is no cause for suspicion. Likewise, the court finds no merit in Defendants' suggestion that because Richard Slater's hand-written trucking invoice, indicating a cattle shipment between Defendants' farm in Tennessee and Plaintiffs' farm in California, listed the point of origin as "Sheldon Farms," rather than "Shelton," that the invoice should be ignored by the court as irrelevant or inadmissible due to this misspelling. This is especially so because the Slater Declaration makes clear that it was "Harry Shelton Livestock Corrals" in Manchester, Tennessee to which the invoice referred. *Slater Decl.* (dkt. 23-4) at 2. Lastly, Defendants suggest that Plaintiffs' declarations are "self-serving." *Defs. Reply* (dkt. 24) at 6-7. However, this argument overlooks two facts: (1) the declarations of Tim and Dorice Miranda are no more self-serving than that of Harry Shelton, such is the nature of declarations and affidavits filed by parties to litigation; and, (2) Plaintiffs have *also* submitted corroborating declarations from J.T. Bybee and Richard Slater, two disinterested parties. Accordingly, for the above-stated reasons, the court will consider all of Plaintiffs' declarations, as

10

well as each of their attached exhibits.

**Personal Jurisdiction**

At the heart of the Parties' dispute regarding personal jurisdiction, there is a verbal contract the terms of which are also the subject of disagreement. As described above, Defendants submit that the agreement was for Miranda to ship cattle to Shelton in Tennessee for impregnation and for subsequent return to Texas, and that Defendants have never shipped any cattle to California or "conducted any activity within California whatsoever." *Defs.' Mot.* (dkt. 17) at 9-10. Thus, Defendants' argument is premised on Shelton's declaration that Defendants have never conducted any activity within California; that all of the cattle at issue in the Complaint were shipped to Texas; and that "Shelton never availed itself (sic) of any obligation which it would seek to enforce in California." *Id*. at 14. On the other hand, Plaintiffs characterize the agreement as one where Plaintiffs would sell young organic heifers to Shelton Livestock such that they could be raised organic, impregnated, and then sold back to Plaintiffs for milk production in Texas as well as in California; the agreement also provided for the purchases of additional young heifers from Defendants' herd that had been transitioned to organic. *See Compl.* (dkt. 1) at 3-4. Accordingly, Defendants' argument that personal jurisdiction is lacking in California must be resolved with the understanding that several key jurisdictional facts are in dispute.

In any event, Defendants argue that the allegations in the Complaint are insufficient to establish a basis for the exercise of personal jurisdiction, and that the causes of action bear no relationship with any contact with the forum state by Defendants. *Defs.' Mot.* (dkt. 17) at 14-15. Defendants add that if the cattle that they had verbally contracted to ship to Texas somehow ended up in California, that "it had nothing to do with Shelton" and that Plaintiffs' "unilateral activity cannot serve as the basis for the exercise of personal jurisdiction over Shelton." *Id*. at 17. Alternatively, Defendants submit that even if Shelton had shipped cattle to California, or contracted with a California corporation, or accepted payment from a California bank, that each of these activities, would be an insufficient basis on which to establish personal jurisdiction over Shelton. *Id*. at 17-20. Defendants add that, for these reasons, the reasonableness factors weigh against the exercise of personal jurisdiction. *See Defs.' Reply* (dkt. 24) at 11-14; and, *Defs.' Sur-*

*Sur Reply* (dkt. 36) at 4-6.

There are two types of personal jurisdiction: general jurisdiction exists if the nonresident's contacts with the forum are continuous and systematic, and the exercise of jurisdiction satisfies traditional notions of fair play and substantial justice; an exercise of specific jurisdiction, on the other hand, must comport with the state long-arm statute, and with the constitutional requirement of due process. *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995). Plaintiffs do not contend that the court has general jurisdiction; only specific jurisdiction is at issue. *See Pls.' Resp. Opp'n* (dkt. 23) at 10.

Federal courts apply state law to determine the bounds of their jurisdiction over a party. *See* Fed. R. Civ. P. 4(k)(1)(A). California's long-arm statute permits the exercise of jurisdiction to the full extent that such exercise comports with due process. *See* Cal. Code Civ. P. § 410.10. For such an exercise of jurisdiction over a non-resident defendant to comport with due process, it is necessary that the defendant "have certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1022-23 (9th Cir. 2017) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A "defendant's suit-related conduct must create a substantial connection with the forum State." *Williams*, 851 F.3d at 1022-23 (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). The relationship between the defendant and the forum state "must arise out of contacts that the defendant itself creates with the forum State." *Williams*, 851 F.3d at 1022 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Additionally, it should be noted that the necessary "minimum contacts" must be with the forum State itself, not merely with persons who reside there. *Williams*, 851 F.3d at 1023.

In light of this, a federal court will exercise specific jurisdiction over a non-resident defendant only when three requirements are satisfied: (1) the defendant either purposefully directs its activities or purposefully avails itself of the benefits afforded by the forum's laws; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice, which is to say, that the exercise of jurisdiction would be reasonable. *Id.* (citing *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th

Cir. 2002)). Seven factors are to be considered when weighing reasonableness: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and, (7) the existence of an alternative forum. *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003). None of the seven factors are dispositive, instead, courts are instructed to balance all seven. *Id*.

Plaintiffs bear the burden of proving that the court may exercise personal jurisdiction over the defendant. *Schwarzenegger v. Fred Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). If the jurisdictional challenge is based solely on written papers, a plaintiff must only make a prima facie showing of jurisdiction. *See Harris Rutsky & Co. Ins. Servs.*, 328 F.3d at 1129; *see also Ziegler*, 64 F.3d at 473. In determining whether the plaintiff has met this burden, the court must take the allegations in the plaintiff's complaint as true and resolve disputed jurisdictional facts in the plaintiff's favor. *See AT&T v. Compagnie Bruxelles Lamber*, 94 F.3d 586, 588-89 (9th Cir. 1996) ("conflicts between the facts contained in the parties' affidavits must be resolved in [AT&T's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.").

Accordingly, based on the pleadings and declarations, the existence of a prima facie showing of personal jurisdiction will be evaluated in light of the following set of facts: (1) a verbal was agreement was entered into whereby Plaintiffs would sell organic heifer calves from California and Texas to Shelton Livestock for impregnating and organic-certified raising in Tennessee, and which would later be sold back to Plaintiffs for milk production on their farms in California and Texas; (2) in addition to the sale and buy-back provision, Plaintiffs also agreed to purchase heifer calves from Shelton Livestock's Tennessee herds that had been transitioned to organic for dairy production on their farms in California and Texas; (3) pursuant to this agreement, a quantity of cattle was sent from Shelton Livestock's farm in Tennessee to Plaintiffs' farm in Ferndale, California in October of 2016; (4) this cattle, which appeared healthy initially but turned out to be diseased, mingled with Plaintiffs' herd, causing widespread damage to Plaintiffs' dairy

herd in California.

Given this set of facts, the court finds that Plaintiffs have demonstrated that Defendants' contacts with California are such that the maintenance of this action in California does not offend traditional notions of fair play and substantial justice. Shelton Livestock is being sued for breach of contract and negligence, as well as both Defendants being named sued for fraud, relating to a cattle-exchange and cattle-purchase agreement whereby Defendants, from Tennessee, had agreed to purchase and raise cattle in a specified fashion for sale to a California resident for the purpose of organic dairy production in California. The court finds, therefore, that Defendants' suit-related conduct has created a substantial connection with California; that is, the relationship between Defendants and California arose from the contacts that Defendants themselves created with the forum state. Put another way, the court finds that Defendants have purposefully directed their activities at California, and that Plaintiffs' claims arise out of and relate to Defendants' forum-related activities. All that remains, is for the seven reasonableness factors to be weighed.

The first factor – the *degree* of Defendants' purposeful interjection into the forum state's affairs – weighs in Plaintiffs' favor. Unlike cases where the interjection was found to be "attenuated," (*see, e.g., Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993) (defendants' only contact with forum state was writing article alleged to have targeted a California resident)), in the present case, Shelton Livestock entered into a contract, and Defendant Shelton made certain representations, that placed them in the suppliers' chain for part of the food supply in California. The court finds that, by its nature, a contract to participate in the food supply of a forum state constitutes a relatively high degree of purposeful interjection into that state's affairs. Hence, this factor weighs in favor of the reasonableness of exercising personal jurisdiction.

The second factor – the burden on Defendants in defending the litigation in this forum – weighs slightly in Plaintiffs' favor. While it is true that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders," *Asahi Metal Ind. v. Superior Court*, 480 U.S. 102, 114 (1987), the burden of distance between states, let alone across national boundaries, is no longer considered to be such an overwhelming burden due

to "modern advances in communications and transportation [that] have significantly reduced the burden of litigating in another [state or] country." *Sinatra v. National Enquirer*, 854 F.2d 1191, 1199 (9th Cir. 1988). Here, while Defendants would undergo some burden in traveling to litigate the case in California, Defendants would likely be faced with even greater burdens if made to defend this case in Texas or Tennessee. As Plaintiffs have noted, a significant portion of what might constitute evidence in this case – a herd of allegedly diseased and dead cattle – is located in California. The court finds that because the cattle at the heart of this case are located in California, the burden on Defendants in traveling to California to litigate the case is somewhat mitigated. Accordingly, the court finds that this factor weighs slightly in favor of the reasonableness of exercising personal jurisdiction because it is not clear if Defendants would endure a lesser burden if defending this case in Texas or Tennessee.

As to the third factor – conflict with the sovereignty of Defendants' state – the due process limitations on suits against non-residents find their origins in constitutional federalism and the consequential sovereignty of states. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980). Thus, the reasonableness of jurisdiction under this factor hinges on the seriousness of the potential affront to the sovereignty of a defendant's state. *Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1272 (9th Cir. 1981). The court finds that litigating this case in California involves little or no affront to the sovereignty of Tennessee, therefore, this factor also weighs in favor of the reasonableness of exercising personal jurisdiction.

The fourth factor – the forum state's interest in adjudicating the dispute – as a starting point, it should be noted that California maintains a strong interest in providing an effective means of redress for its residents who have been tortiously, or otherwise, injured. *See Sinatra*, 854 F.2d at 1200; *Brand v. Menlove Dodge*, 796 F.2d 1070, 1075 (9th Cir. 1986) ("California's interest [here] is, at most, an interest in assuring that out-of-state residents do not knowingly allow defective products to be sold for delivery in California."). Aside from the generalized interest in providing an effective means of redress for its residents who have been injured, California has a more specific, public-health interest in the integrity of its food supply. *Cf. Harris Rutsky & Co. Ins. Servs.*, 328 F.3d at 1133 (weighing this factor in favor of Plaintiff merely by virtue of Plaintiff's

15

residence in California). Because this dispute involves the alleged spread of disease among a California dairy herd, implicating the integrity of a component of California's dairy supply, where such has not been suggested to be the case elsewhere, the court finds that California has a significantly stronger interest in the adjudication of this dispute than would be the case in Texas or Tennessee. Accordingly, the court finds that this factor weighs in favor of the reasonableness of exercising personal jurisdiction.

The fifth factor – the most efficient forum for the resolution of the controversy – focuses on the location of the evidence and witnesses. *Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 129 (9th Cir. 1995). While there are some evidentiary components of this case that would be located on Shelton Livestock's premises in Tennessee, for example pertaining to the conditions under which the subject cattle were raised, fed, or housed, nevertheless, the livestock evidence at the heart of this case is located in California. Because the bulk of the evidence that would be at issue in this case is located in California, the court finds that this factor weighs in favor of the reasonableness of exercising personal jurisdiction.

The sixth factor – Plaintiffs' interest in obtaining convenient and effective relief – focuses on the importance of the forum to Plaintiffs' interests. *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 868 (9th Cir. 2003). This factor has been described as relatively straightforward: "no doctorate in astrophysics is required to deduce that trying a case where one lives is almost always a plaintiff's preference." *Roth v. Garcia Marquez*, 942 F.2d 617, 624 (9th Cir. 1991). Here, Plaintiffs' interest in California is hardly minimal, Plaintiff owns and operates a commercial dairy farm in California, and the harm that has been pleaded in the Complaint is alleged to have occurred in California. This factor, therefore, also weighs in favor of the reasonableness of exercising personal jurisdiction.

The final factor – the existence of an alternative forum – is a contingent inquiry such that "[i]f a plaintiff wishes to argue the unavailability of an alternative forum as a factor increasing the reasonableness of jurisdiction in the forum, he must carry the burden of going forward on this issue." *Ins. Co. of N. Am.*, 649 F.2d at 1273. Here, Plaintiffs concede that "[b]ecause there are two alternative forums, Texas and Tennessee, this factor does not favor Plaintiffs." *Pls.' Sur-Reply*

16

(dkt. 37) at 5. Hence, this factor weighs against the reasonableness of exercising personal jurisdiction. However, having concluded that the majority of the reasonableness factors weigh in Plaintiffs' favor, and for the reasons stated above, the court finds that Plaintiffs have satisfied their burden of establishing the existence of personal jurisdiction over Defendants.

## Statute of Limitations

Shelton Livestock also contends that Plaintiffs' breach of contract claim is barred by the expiration of a 2-year statute of limitations because the oral contract was not for the sale of goods, but for the performance of a service – namely, the impregnating and raising of Plaintiffs' cattle. *Pls.' Mot.* (dkt. 17) at 22-24; *Pls.' Reply* (dkt. 24) at 14-15. However, this argument fails in light of the allegations pleaded in the Complaint. As described above, the Complaint alleges that Shelton Livestock was to buy Plaintiffs' heifer calves, raise them organic and impregnate them, and then sell them back to Plaintiffs at a higher price for use in dairy production, in addition to selling Plaintiffs' cattle from their own herd that had been likewise raised organic. Because Plaintiffs have alleged a breach of contract for the sale, purchase, and re-purchase of goods, occurring in October of 2016, Defendant Shelton Livestock's argument to the effect that the claim is time-barred by a statute of limitations that is applicable to verbal service contracts is unpersuasive, the correct statute of limitations is 4 years and the claim is timely. *See* Cal. Com. Code § 2725.

## Fraud and Negligence Claims

Lastly, Defendants argue that Plaintiffs fail to state claims for fraud and negligence because "[a] plaintiff in a breach of contract action cannot recover tort damages for alleged breaches of the same duties imposed by the contract." *Defs.' Mot.* (dkt. 17) at 24. Defendants contend that "none of the alleged misrepresentations, omissions, negligence, or fraud alleged in Plaintiffs' Complaint is actionable in a breach of contract action because Plaintiffs are limited to contract damages for alleged breaches of the contract." *Id.* at 25. Plaintiffs respond that by arguing that Defendants "made affirmative misrepresentations about raising heifers organically and additional fraudulent omissions by failing to notify Miranda that his heifers were diseased, which caused extraordinarily high damages far beyond the contractual expectations of the parties[; and

that] Shelton's fraudulent statements and actions during the formation and performance of the

parties' contract puts the claim outside of the scope of the economic loss rule." *Pls.' Resp. Opp'n*

(dkt. 23) at 20-21. As to the negligence claim, Plaintiffs submit that "Shelton's actions caused

significant physical injury to Miranda's other property including heifers that became infected by

Shelton's heifers," contending that "[s]uch damage is sufficient to take Miranda's claims outside

of the economic loss rule." *Id.* at 21.

      In general, the 'economic loss rule' precludes a plaintiff from suing a defendant for a

tortious breach of contract without alleging that the defendant has violated a duty separate from

the breach of contract. *See e.g.*, *Erlich v. Menezes*, 21 Cal. 4th 543, 551, 87 Cal. Rptr. 2d 886, 981

P.2d 978 (Cal. 1999) ("conduct amounting to a breach of contract becomes tortious only when it

also violates a duty independent of the contract arising from principles of tort law"); *see also Aas

v. Superior Court*, 24 Cal. 4th 627, 643, 101 Cal. Rptr. 2d 718, 12 P.3d 1125 (Cal. 2000) ("A

person may not ordinarily recover in tort for the breach of duties that merely restate contractual

obligations"); *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515, 28 Cal. Rptr.

2d 475, 869 P.2d 454 (Cal. 1994) ("Conduct amounting to a breach of contract becomes tortious

only when it also violates an independent duty arising from principles of tort law"). It should also

be noted that although a tort claim must be premised on a duty other than an ordinary contractual

duty or obligation, the necessarily separate and special duty may nevertheless still owe its

existence to the contract. Put another way, an action or omission which merely breaches a contract

is not a tort, but the contract may establish a relationship demanding the exercise of proper care,

and acts or omissions in the course of performance may give rise to tort liability. *See Freeman &

Mills v. Belcher Oil Co.*, 11 Cal. 4th 85, 107, 44 Cal. Rptr. 2d 420, 900 P.2d 669 (Cal. 1995)

(Mosk, J., concurring and dissenting) (quoting *Groseth Intern., Inc. v. Tenneco, Inc.*, 440 N.W. 2d

276, 279 (S.D. 1981)).

      The court rejects Shelton Livestock's argument that Plaintiffs' negligence claim is due to

be dismissed under the 'economic loss rule' because the court finds that Plaintiffs' negligence

cause of action alleges an independent tort duty, separate from the contractual obligations. When

read in the light most favorable to Plaintiffs, the Complaint alleges a duty of reasonable care to

perform with care, skill, and faithfulness. Plaintiffs have also submitted that Shelton Livestock's failure to adhere to this standard of care, by shipping diseased cattle, has caused significant physical injury and damage to Miranda's other cattle through the spread of disease. It is well established that "for over 50 years California has also recognized the fundamental principle that accompanying every contract is a common-law duty to perform with care, skill, reasonable expedience, and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of the contract" and that "[t]he rule which imposes this duty is of universal application as to all persons who by contract undertake professional or other business engagements requiring the exercise of care, skill and knowledge; the obligation is implied by law and need not be stated in the agreement." *N. Am. Chem. Co. v. Superior Court*, 59 Cal. App. 4th 764, 774, 69 Cal. Rptr. 2d 466, 470 (Cal. 1997) (citing *Roscoe Moss Co. v. Jenkins*, 55 Cal. App. 2d 369, 377, 130 P.2d 477, 481 (Cal. 1942) (internal quotations and citations omitted)). Because Plaintiffs' claim for negligent performance of the contract is viable, having alleged that diseased cattle were negligently shipped to California, the court denies Shelton Livestock's motion to dismiss the negligence claim.

As to the fraud claim, once again, the purpose of the 'economic loss rule' is "to prevent every breach of a contract from giving rise to tort liability and the threat of punitive damages: 'Quite simply, the economic loss rule prevents the law of contract and the law of tort from dissolving one into the other.'" *WeBoost Media S.R.L. v. LookSmart Ltd.*, No. 13-cv-5304-SC, 2014 U.S. Dist. LEXIS 80978, at *13-15 (N.D. Cal. June 12, 2014) (quoting *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988, 22 Cal. Rptr. 3d 352, 102 P.3d 268 (Cal. 2004) (internal quotation marks and brackets omitted). Where contract actions enforce the intentions of the parties to the agreement, tort actions are primarily concerned with the vindication of social policy. *WeBoost Media S.R.L.*, 2014 U.S. Dist. LEXIS 80978, at *13-15 (quoting *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 683, 254 Cal. Rptr. 211, 765 P.2d 373 (Cal. 1988)).

To establish a claim for fraudulent concealment, a plaintiff must allege that: (1) the defendant concealed or suppressed a material fact, (2) the defendant was under a duty to disclose the fact to the plaintiff, (3) the defendant intentionally concealed or suppressed the fact with the

intent to defraud the plaintiff, (4) the plaintiff was unaware of the fact and would not have acted as she did if she had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff sustained damage. *See Hahn v. Mirda*, 147 Cal. App. 4th 740, 748, 54 Cal. Rptr. 3d 527 (Cal. Ct. App. 2007). A complaint meets this standard if it alleges a time, place, and content for the allegedly fraudulent misrepresentation or omission; the identity of the person or persons involved; and, the circumstances indicating falsity. *See Genna v. Digital Link Corp.*, 25 F. Supp. 2d 1032, 1038 (N.D. Cal. 1997) (citing *In re GlenFed Sec. Litig.*, 42 F.3d 1541, 1547-58 n.7 (9th Cir. 1994)).

The court finds that the allegations in Plaintiffs' Complaint make out a viable claim for fraud that lies outside the contracting parties' reasonably anticipated losses from breach. Plaintiffs allege that Defendants represented that their heifers were organic, as defined in 7 C.F.R. § 205 ("National Organic Program"), while failing to disclose that they were "fed with feed bunks that were in deep mud with manure and flies all around," or that the cattle lacked fresh water and that they were made to drink dirty water from "wading ponds." *Compl.* (dkt. 1) at 3, 11. The Complaint also alleges that Defendants failed to disclose certain systemic defects with Defendants' operation, such as the fact that the heifers sold to Plaintiffs "grazed in pastures with high grass that cut their teats," or the fact that these heifers "had their teats rolled." *Id*. at 11. Additionally, the Complaint alleges that Defendants did not disclose that the heifers sold to Plaintiffs were in poor health, given that "Shelton did not disclose that it (sic) fed its heifers milk infected with Staph." *Id*. The Complaint goes on to allege that Defendants also failed to disclose that the heifers they sold Plaintiffs had high bacteria counts in their lymph nodes, extreme mastitis, and that many "had aborted or were being sucked by another animal." *Id*. at 12. In short, the Complaint states that Defendants made a series of representations that induced Plaintiffs' entry into the agreement; that Defendants were under a duty to disclose the above-described conditions; that Defendants concealed or suppressed these facts with the intent to defraud Plaintiffs; and that as a result of the suppression of these facts, Plaintiffs' herd was infected by Defendants' diseased cattle. *Id*. The court, therefore, finds that Plaintiffs' claim for fraud is viable at this stage because Plaintiffs have alleged that Defendants have violated a duty separate from the duty involved in the

United States District Court
Northern District of California

breach of contract claim. Accordingly, the court denies Defendants' motion to dismiss this claim as well.

**CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss (dkt. 17) is DENIED.


**IT IS SO ORDERED.**

Dated: February 14, 2019

ROBERT M. ILLMAN
United States Magistrate Judge