UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| MIRANDA DAIRY, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>HARRY SHELTON LIVESTOCK, LLC, et al.,<br><br>    Defendants. | Case No. 18-cv-06357-RMI<br><br>**ORDER RE: DISCOVERY DISPUTES**<br><br>Re: Dkt. Nos. 111, 112, 113, 114 |

Now pending before the court are four letter briefs through which the Parties complain about a host of discovery disputes. At the outset, the court will note that, pursuant to Paragraph 13(a) of the undersigned's General Standing Order, discovery disputes must be presented in a jointly filed letter brief that should be preceded with a good-faith effort to resolve or narrow the disputes without court intervention. Putting aside the fact that two of the four currently pending letter briefs were unilaterally filed, a common theme amongst all four briefs is the abject failure of the parties to meet and confer in any *meaningful* fashion before dumping a series of unrefined, sometimes unripe, and sometimes moot disputes onto the court's docket.

Because each side has pointed at the other's lack of good faith in the meet and confer process, the court is left with no choice but to remind the parties that "[t]he Court will not entertain a request or a motion to resolve a disclosure or discovery dispute unless, pursuant to Fed. R. Civ. P. 37, counsel have previously conferred for the purpose of attempting to resolve all disputed issues." Civ. L.R. 37-1(a). In this regard, it is incumbent on counsel for the parties "to communicate directly and discuss in good faith the issue(s) required under the particular Rule or order . . . The mere sending of a written, electronic, or voice-mail communication, [] does not

1 satisfy a requirement . . . [instead] this requirement can be satisfied only through direct dialogue
2 and discussion – either in a face to face meeting or in a telephone conversation." Civ. L.R. 1-5(n).
3 This requirement is not a meaningless formality, nor is it optional; instead, the purpose of a meet
4 and confer requirement is for the parties to engage in a meaningful dialogue about their respective
5 positions on disputed issues to see whether they can resolve (or at least refine) the disputes
6 without court intervention, saving time and money for the litigants as well as the court system. *See*
7 *Fireman's Fund Ins. Co. v. Hartford Fire Ins. Co.*, 2013 U.S. Dist. LEXIS 147020, at *9 (N.D.
8 Cal. Sep. 30, 2013) ("The purpose of the meet and confer requirement is to ensure that the
9 particular relief requested in a motion, in fact, requires judicial intervention.") *see also Wong v.*
10 *Astrue*, 2008 U.S. Dist. LEXIS 111133, 2008 WL 4167507, at *2 (N.D. Cal. 2008) ("The purpose
11 of the [meet and confer] requirement is to encourage settlement, resolve disputes which need not
12 involve the Court, and avoid unnecessary litigation, thus saving the parties', the Court's, and the
13 taxpayers' limited time, money, and resources."); *California v. Iipay Nation of Santa Ysabel*, 2015
14 U.S. Dist. LEXIS 67415, 2015 WL 2449527, at *6 (S.D. Cal. May 22, 2015) ("A purpose of a
15 meet and confer requirement is to resolve issues without the need for further action."); *Eusse v.*
16 *Vitela*, Case No.: 3:13-cv-00916-BEN-NLS, 2015 U.S. Dist. LEXIS 167660, 2015 WL 9008634,
17 at *3 (S.D. Cal. Dec. 14, 2015) ("This process, when successful, 'obviates the need for
18 unnecessary motion practice, which, in turn, conserves both the Court's and the parties'
19 resources.'") (internal citation omitted). Thus, in order to effectuate this purpose, "parties must
20 'treat the informal negotiation process as a substitute for, and not simply a formal prerequisite to,
21 judicial review of discovery disputes.'" *U-Haul Co. of Nevada v. Gregory J. Kamer, Ltd.*, 2013
22 U.S. Dist. LEXIS 132795, 2013 WL 5278523, at *2 (D. Nev. Sept. 17, 2013) (internal citation
23 omitted). For the reasons discussed below, the parties' efforts in this regard have fallen woefully
24 short of the above-described standards.
25 In the first of the four pending letter briefs ("Ltr. Br. #1"), all of the issues raised by
26 Defendants are hollow complaints that appear to be of little consequence. *See* Ltr. Br. #1 (dkt.
27 111) at 1-2. Regarding the first issue, Defendants complain that Plaintiffs served certain discovery
28 responses about 12 weeks after they were due, and Plaintiffs respond to the effect that they

1  communicated with Defendants about this timing issue and relied on Defendants silence to mean
2  that there was no objection as to the timing of these responses. Therefore, Defendants' request to
3  order amended responses without objections due to the lateness of the original responses is
4  **DENIED**.

5        The second issue seems to be presented in a disjointed fashion where Defendants contend
6  that Plaintiffs have improperly asserted privilege over certain documents, but with Plaintiffs
7  responding that this issue has been addressed and resolved by way of a separate letter to
8  Defendants. *Id*. at 2-3. Similarly, this dispute appears not have been preceded with a good faith
9  effort to refine or resolve the issue through reasonable efforts to meet and confer; thus,
10 Defendants' request "that the court order Plaintiffs to remove their improper assertions of
11 privilege / work product as well as their false claims of authorship over documents which are not
12 privileged . . ." is **DENIED**.

13       The third issue concerns, *inter alia*, both parties' complaints that they are unable to access
14 the electronic files that each has tendered in discovery (*see id*. at 3-4); in this regard, both parties
15 are **ORDERED** to cooperate with one another such as to ensure the opposing party's access to the
16 information tendered in discovery. Yet another example of disjointed argument and a failure to
17 meaningfully meet and confer is manifest in Issue #3 where Defendants seek to compel discovery
18 pertaining to Plaintiffs' alleged damages and lost profits, while Plaintiffs maintain that "[a]ny
19 documents used or relied upon to prove damages and lost profits have been or will be produced
20 with Plaintiffs' expert disclosures." *Id*. at 3-5. Accordingly, because Plaintiffs have committed to
21 producing all documents used or relied upon to prove their damages, Defendants' request to
22 compel the production of such information is **DENIED**.

23       In Issue #4, Defendants seek the court's assistance in forcing Plaintiffs to help Defendants
24 in identifying the specific documents tendered in discovery that might be responsive to specific
25 requests while Plaintiffs submit that they have produced documents in a searchable format and that
26 "Defendants' decision not to use basic eDiscovery tools" is at the root of their problem with
27 searching through the discovery that has been tendered. *Id*. at 5-6. In this regard, Defendants seek
28 court intervention such as to force Plaintiff to identify which documents are responsive to dozens

of RFPs. *Id*. at 5. This is the very sort of issue that the court expects to be resolved without court intervention and with just a modicum of professionalism from counsel; thus, while Defendants' request for court intervention in this regard is **DENIED**, as was the case with Issue #3 above, the Parties are **ORDERED** to cooperate with one another in a good-faith effort to move the litigation forward by ensuring each other's reasonable access to the materials tendered in discovery.

Lastly, in Issue #5, Defendants contend that Plaintiffs have failed to cooperate in responding to Defendants' interrogatories. *Id*. at 6-7. As to Interrogatory #2, Defendants submit that while Plaintiffs objected to certain phrasing as overly broad and burdensome, and while Defendants have offered to draft a more narrowly phrased interrogatory, that Plaintiffs refused that offer and refused to provide any further answer – and, in this regard, Plaintiffs have provided no response in their portion of the letter brief. Thus, Plaintiffs are **ORDERED** to cooperate with Defendants in their efforts to rephrase that particular interrogatory such that Plaintiffs' reservations about answering it may be addressed. Further, Defendants contend that Interrogatories 4 through 25, pertaining to damages, have yet to be responded to, while Plaintiffs have committed to providing their damages calculations together with their expert report when that information becomes available. Accordingly, Defendants request to compel this information now is **DENIED**.

In the second of the four pending letter briefs ("Ltr. Br. #2"), Plaintiffs take the lead in presenting a series of similarly hollow complaints – in essence, a further wasting of the court's time by arguing simply for argument's sake, exactly as was the case with Ltr. Br. #1. *See generally* Ltr. Br. #2 (dkt. 112) at 1-5. In a very similar fashion, this letter brief does little more than to evidence the acrimonious relationship between counsel in this case, a relationship that has degraded to what can only be described as petty bickering, and which has impaired the discovery process. For example, in the first dispute outlined in Ltr. Br. #2, Plaintiffs complain about the impropriety of Defendants' often-used response to certain requests for production to the effect that "[d]iscovery is continuing and responding parties will update disclosures, production, and responses as necessary." *Id*. at 1. Defendants then submit that "Plaintiffs give almost the exact same statement in all of their discovery responses." *Id*. at 2. Defendants add that they have

informed Plaintiffs that no documents have been withheld pursuant to this statement; that responsive documents have been produced and identified; and that the statement is simply indicative of Defendants' acknowledgement of their continuing duty to supplement. It is unclear exactly what relief Plaintiffs seek from the court here – it appears that Plaintiffs wish for the court to direct Defendants to state exactly that which Defendants have already stated in their portion of this letter brief – namely, that responsive documents have already been tendered. Accordingly, Plaintiffs' motion to compel such a statement is **DENIED** as moot.

The second dispute in this letter brief has Plaintiffs complaining about Defendants' objection to the phrase "related to" as it pertains to RFP Nos. 2, 8, 9, 11, 12, 13, 15, 16, and 17. *See id*. at 2. Defendants submit that Plaintiffs' complaint was not discussed during the parties meet and confer efforts with the exception of where it related to RFP No. 2, and that in any event, "Defendants identified and produced the documents they believe to be responsive and . . . that no documents were withheld on the basis of the objection." *Id*. Thus, Plaintiffs' request to compel "[a] clear, comprehensive, and unqualified response," is **DENIED** as moot.

The third dispute in this letter brief has Plaintiffs complaining of Defendants' objection to the phrase "relied upon," as it relates to RFP Nos. 3 and 4, and so Plaintiffs again seek to compel "[a] clear, comprehensive, and unqualified response." *Id*. Defendants submit that these RFPs sought documents that were "relied upon" by Defendants in responding to a number of requests for admissions, and that "Defendant[] 'relied upon' the contents of his brain . . . [but] to the extent that the contents of a person's brain are the culmination of everything that that person has reviewed in the past and persists in long-term memory, then, in that sense, all of the documents produced were 'relied upon' . . . [and those] documents were identified, produced, and none were withheld as explained to Plaintiffs' counsel." *Id*. at 2-3. Thus, Plaintiffs' request to compel "[a] clear, comprehensive, and unqualified response," in this regard is likewise **DENIED** as moot.

The fourth dispute in this letter brief has Plaintiffs complaining about Defendants' objections to the definition of the term, "your herd," because Plaintiffs seek information about Defendants' cattle that came into contact with cattle that were bound for Plaintiffs' dairy farm and which allegedly communicated and spread diseases to Plaintiffs' herd. *Id*. at 3. Meanwhile,

5

Defendants respond that their objection to the term is valid because "Plaintiffs' definition assumes that all herds on Defendants' properties all come into contact with one another at all times . . . [and if] Plaintiffs would be willing to revise and re-issue requests with the definition they apparently intended to give to the phrase, Defendants would happily respond accordingly." *Id*. Plaintiffs' motion to compel in this regard is **DENIED**, Defendants' objection is **SUSTAINED**, and the parties are **ORDERED** to *meaningfully* meet and confer regarding this issue such that Plaintiff can intelligently and efficiently revise and re-issue the requests to which Defendants have now confirmed that they "would be happy to respond accordingly."

In the fifth, sixth, seventh, and eighth disputes presented in this letter brief, Plaintiffs again complain that Defendants have objected to the terms, "related to," "relied upon," and "your herd," as used in RFP Nos. 2, 4, 8, and 9. *See id*. at 4-5. As to each of these four complaints, Defendants respond that there is no real "dispute" here because Defendants have explained to Plaintiffs that the pertinent documents were identified and produced, and that no documents were withheld on the basis of these objections. *See id*. Consequently, Plaintiffs' requests to compel the production and identification of responsive documents are **DENIED** as moot.

The final dispute in this letter brief pertains to RFP 19 and involves Plaintiffs' request for documents that identify the land upon which Plaintiffs' heifers and Defendants' cows grazed and were processed. *Id*. at 5. Plaintiffs submit that Defendants have objected that the phrase "detailed map showing the land" is too vague to understand. *Id*. Meanwhile, Defendants submit that they do not maintain "detailed maps"; that "the documents sought are [otherwise] protected from disclosure by the right to privacy"; and, that "the phrase 'real property records' is vague, ambiguous, and unintelligible." Plaintiffs' motion to compel in this regard is **GRANTED** and Defendants' objections **OVERRULED**. Defendants are ordered to tender any documents in their possession responsive to RFP No. 19 forthwith and without further objections.

The remaining two letter briefs (Plaintiffs' Supplemental Letter Brief, "Ltr. Br. #3," and Defendants' Objection to Plaintiffs' Supplemental Letter Brief, "Ltr. Br. #4," respectively dkts. 113 and 114) are unilaterally-filed documents that are not compliant with the joint filing requirements outlined in Paragraph 13(a) of the undersigned's General Standing Order, as well

being filed in derogation of the meet and confer requirements provided in Fed. R. Civ. P. 37, and Civ. L.R. 37-1 ("The court will not entertain a request or a motion to resolve a disclosure or discovery dispute unless, pursuant to Fed. R. Civ. P. 37, counsel have previously conferred for the purpose of attempting to resolve all disputed issues."). Accordingly, any and all relief sought by either party in Ltr. Br. #3 and Ltr. Br. #4 is **DENIED**.

The above-described "disputes" were the product of rank unreasonableness and uncooperative attitudes by counsel who treated the meet and confer requirements of this court's rules as a mere formality and a hollow prerequisite to the dumping of unrefined, insignificant, and sometimes moot, disagreements onto the court's docket. For that reason, the court will take this opportunity to warn counsel for both parties that this court is not a clearinghouse for resolving insignificant, unripe, or moot discovery disputes. Instead, counsel should be mindful that discovery is the responsibility of the parties and turning to the court to resolve a discovery dispute should only be used as a last resort. While the court does have a duty to actively and effectively manage the discovery process such as to ensure that the parties have efficient access to necessary discovery while eliminating unnecessary and wasteful discovery, at the same time, it goes without saying that this duty is not automatically triggered each and every time counsel can conjure up one or another thing about which to disagree. Attorneys practicing in this court are expected to seek court involvement in discovery disputes only as a last resort, and only when the dispute implicates truly significant interests that counsel cannot resolve through *reasonable cooperation* during the meet-and-confer process. Neither party has presented any indication at all that this was done here.

**IT IS SO ORDERED.**

Dated: October 22, 2020

ROBERT M. ILLMAN
United States Magistrate Judge