UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| MIRANDA DAIRY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> HARRY SHELTON LIVESTOCK, LLC, et al., <br><br> Defendants. | Case No. 18-cv-06357-RMI <br><br> **ORDER RE: DISCOVERY DISPUTE** <br><br> Re: Dkt. No. 137 |

Now pending before the court is a jointly-filed letter brief setting forth a discovery dispute that boils down to Defendants' requests to compel certain discovery. *See* Ltr. Br. (dkt. 136).[1] For the reasons stated below, Defendants' requests are granted and Plaintiffs' objections are overruled.

At the outset, the court will note that the spirit embodied in the discovery rules makes clear that a liberal and broad-based discovery process promotes the efficient and early resolution of litigation and, in the alternative, it promotes the narrowing of issues at trial. *See generally Reinsdorf v. Skechers U.S.A., Inc.*, No. CV 10-7181 DDP (SSx), 2013 U.S. Dist. LEXIS 200627, at *23 (C.D. Cal. Sep. 9, 2013) (citing *Episcopo v. General Motors Corp.*, 2004 U.S. Dist. LEXIS 5142, 2004 WL 628243 at *7 (N.D. Ill. Mar. 29, 2004)). In this regard, Rule 26(b)(1) provides for discovery of any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case while accounting for the importance of the issues, the amount in controversy, the Parties' relative access to relevant information, the Parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the

---

[1] Pursuant to Civil Local R. 7-1(b), the court finds that this matter is suitable for disposition without oral argument.

proposed discovery outweighs its likely benefit. *See generally* Fed. R. Civ. P. 26(b)(1).

If a party wishes to resist discovery, that party must carry the heavy burden of showing why discovery should be denied. *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). The resisting party must show that the discovery request is overly broad, unduly burdensome, irrelevant or disproportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(2)(C); *see also Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 472-73 (9th Cir. 1992). To meet this burden, the resisting party must specifically detail the reasons why each request is improper. *Id*. at 476 ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."). Similarly, boilerplate or generalized objections are inadequate and are tantamount to making no objection at all – as such, they will be disregarded by the court. *Id*. Lastly, it should not go without mention that in controlling discovery, and in determining whether discovery is burdensome or oppressive, courts have broad discretion. *See generally Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988); *see also Beckman, Indus.*, 966 F.2d at 476.

In this case, Plaintiffs are organic milk producers who entered into an agreement with Defendants to feed and raise organic cattle – however, Plaintiffs contend that Defendants sold them diseased cattle "that were unfit to be organic." *See* Compl. (dkt. 1) at 1-2. At bottom, Plaintiffs allege breach of contract, fraud, and negligence. *Id*. at 10-13. In turn, Plaintiffs seek "general and special damages, punitive damages, treble damages, and all other damages to be determined at trial . . ." *Id*. at 13. More specifically, Plaintiffs contend that Defendants' actions and omissions have damaged them "by infecting their herds, causing Plaintiffs to dump an extremely large amount of milk and slaughter their cattle . . . [and that] [t]he unfit diseased cattle delivered to Plaintiffs by [Defendants] . . . caused the Plaintiffs to lose the organic quality required per the Milk Production Agreements[,] [as such] Plaintiffs were required to sell the cattle and not sell their milk." *Id*.

Here, Defendants seek discovery amounting to: (1) Plaintiffs' financial records for the years ranging between 2010 and the present; and (2) Plaintiffs' daily milk production records from 2014 to the present (including any testing data and somatic cell counts from Plaintiffs' dairies). *See* Ltr. Br. (dkt. 136) at 1-2. Defendants explain that, during her deposition, Mrs. Miranda

2

testified that Plaintiffs' financial records are maintained on Quickbooks, and further, that "Defendant's expert confirms that it is necessary to have the Quickbooks [records] for a five-year period prior to the time of the alleged loss through the present to adequately assess [P]laintiffs' claims, claimed damages, i.e., loss of profits and increased expenses, and issues surrounding mitigation [of damages] . . . [and that these records] will adequately demonstrate natural market fluctuation and potentially other issues affecting the profitability [Plaintiffs'] business other than the conduct of the [D]efendants." *Id*. Mrs. Miranda also testified during her deposition such that Defendants – for the first time – became aware that Plaintiffs "have daily milk production records from 2014 to the present which set forth a description of how much milk each pen of approximately 200 animals produced, the total amount of production for a given day, as well as the amount of milk that was not sent to the milk purchaser from the 'hospital' pen." *Id*. at 2. Defendants also request an opportunity for further depositions of Tim Miranda and Mr. Francis based on the fact that Plaintiffs' served a supplemental disclosure of financial information from the period between 2016 and 2018 after the depositions of Mr. Miranda and Mr. Francis were already completed. *Id*. at 3. Defendants also wish to depose Mr. Kyle Miranda (*id*. at 3) and Plaintiffs submit that they "are unable to take a position [in this regard] at the time of this letter and, therefore, do not specifically oppose it." *Id*. at 5.

      Plaintiffs' responses are generalized and unpersuasive. *See id*. at 4-5. As to the financial data (from Plaintiffs' Quickbooks databases), Plaintiffs submit that "[t]his is an overbroad time period." *Id*. at 4. Plaintiffs complain that "[n]othing that happened in 2010 could inform what would have happened had Defendants not infected Plaintiffs' animals in 2016." *Id*. at 4. However, the court finds this objection to be unpersuasive because Plaintiffs' objection essentially focuses on the point that this information is unrelated to liability, however, Defendants seek this data in relation to inquiring into the scope of Plaintiffs' damages. Plaintiffs further contend that because "Plaintiffs have not [yet] provided their expert disclosures[,] Defendants' experts could not know what is necessary to address Plaintiffs' damages." *Id*. This contention is also unpersuasive because Defendants should be allowed to take discovery related to the issue of damages during the period of fact discovery in order to be able to independently quantify the scope of Plaintiffs' dairy

business before, as well as after, the alleged actions and omissions that are claimed to have caused Plaintiffs' business to suffer to some currently-unknown extent. Accordingly, Defendants' request to compel Plaintiffs' financial records (maintained on Quickbooks) from 2010 to the present is **GRANTED** and Plaintiffs' objections are **OVERRULED**. Plaintiffs are **ORDERED** to produce this material forthwith.

As to Defendants' request to compel daily milk production records (including testing data and somatic cell counts) from 2014 to the present, Plaintiffs' portion of the letter does not object to this request with any degree of specificity. *See id*. at 4-5. Instead, Plaintiffs appear to simply complain, in general terms, about the fact that "Plaintiffs should not be compelled to respond to more than 889 discovery requests" because Plaintiffs have already "produced 22,477 pages of documents covering 14 supplemental disclosures." *Id*. Accordingly, Plaintiffs' objections in this regard are similarly **OVERRULED** and Defendants' request to compel the production of Plaintiffs' daily milk production records from 2014 to the present (including testing data and somatic cell counts) is **GRANTED**. Plaintiffs are **ORDERED** to produce this material forthwith.

After Plaintiffs have produced the materials described herein – which the court expects to take place *promptly* and without delay – Plaintiffs are **ORDERED** to cooperate with Defendants in scheduling follow-up depositions for Mr. Francis, Mr. Tim Miranda, and Mr. Kyle Miranda as soon as practicable.

**IT IS SO ORDERED.**

Dated: September 30, 2021

ROBERT M. ILLMAN
United States Magistrate Judge