UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| MIRANDA DAIRY, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>HARRY SHELTON LIVESTOCK, LLC, *et al.*,<br><br>Defendants. | Case No. 18-cv-06357-RMI<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT; AND, THE PARTIES' EVIDENTIARY MOTIONS**<br><br>Re: Dkt. Nos. 139, 140, 144, 156, 159 |

Now pending before the court are cross-motions for summary judgment motion filed by Plaintiffs (dkt. 139) and by Defendants (dkt. 140), coupled with various evidentiary motions and objections (*see* dkts. 144, 153, 156, 158, 159, 164). As described below, Plaintiff's motion (dkt. 139) is granted in part, and denied in part; Defendants' motion (dkt. 140) is denied; Plaintiffs' motion to strike and request for sanctions (dkt. 156) is denied; and Defendants' various evidentiary objections (dkts. 144) are overruled.

**Introduction**

Plaintiffs operate dairy farms located in California and Texas – Defendants are Tennessee-based cattle ranchers. *See* Compl. (dkt. 1) at 3. Starting in 2015 (*see* Pls.' Mot. (dkt. 139) at 7), the Parties entered into a business relationship where Plaintiffs (through a third-party, Jean Taylor Bybee) ("Bybee") purchased a few truckloads of cattle from Defendant Harry Shelton in November of 2015 (*id.* at 7), after which, the Parties reportedly entered into an unwritten agreement whereby Plaintiffs would sell young organic heifers to Defendants such that they could be raised as organic while serving as breeders, and then eventually sold back to Plaintiffs at a premium in order for Plaintiffs to sell their milk to organic milk producers. *See* Compl. (dkt. 1) at

3-4. Eventually, the Parties' relationship deteriorated – perhaps due to what appears to be the imprecise and starkly divergent nature of their respective understandings of their unwritten agreement. Thus, the Parties' relationship became overwhelmed with dispute and disagreement about things ranging from what each party had (or had not) promised, to the very meaning of certain material terms such as, "organic," as the term is used in the context of the animals' feed or as to the land on which they would be raised. As a result of which, this instant lawsuit ensued.

Plaintiffs have sued Defendants: (1) for breach of contract, alleging a breach of the Parties' verbal agreement whereby Defendant Shelton is alleged to have agreed, among other things, to sell Plaintiffs' heifers that were healthy, bred and qualified as organic, such that they could produce organic milk (*id*. at 10-11); (2) for fraud, relying on a number of allegations that Defendant Shelton "made fraudulent statements, fraudulent omissions, and misrepresentations" (*id*. at 11-13); and, (3) for negligence in that Defendants' alleged actions and omissions reportedly caused infection to spread though Plaintiffs' herds, "causing Plaintiffs to [have to] dump an extremely large amount of milk and slaughter their cattle." *Id*. at 13. Plaintiffs now move for summary judgment on three grounds – the breach of contract claim, the fraud claim, and as to a number of Defendants' affirmative defenses that have no basis in fact. *See* Pls.' Mot. (dkt. 139) at 7.

For their part, Defendants have counter-sued Plaintiffs, as well as suing Bybee by advancing a number of counterclaims as follows: (1) an action on account that alleges that Counter-Defendants owe Counter-Plaintiffs certain unpaid payments for cattle plus interest, costs, and expenses; (2) a breach of contract claim that alleges that Counter-Plaintiffs properly performed all their obligations under the Parties' verbal agreements but that Counter-Defendants are in breach of their obligations to pay for the cattle they purchased; (3) an unjust enrichment claim (based on the same factual basis); (4) a declaratory judgment claim; (5) an intentional misrepresentation claim to the effect that Counter-Defendants collectively created two forged documents purporting to be affidavits executed by Counter-Plaintiff Harry Shelton certifying that his ranch land meets certain standards for organic use; (6) a negligent misrepresentation claim against all Counter-Defendants; (7) a civil conspiracy claim against all Counter-Defendants; and, (8) a derivative claim against Counter-Defendant Bybee for implied equitable indemnity. *See*

2

Amended Counter Claim for Damages and Declaratory Judgment (hereafter, "Counterclaims") (dkt. 76) at 7-18. Since the filing of the Counterclaims, Counter-Plaintiffs and Counter-Defendant Bybee have settled their disputes and stipulated to the dismissal of all claims against Bybee with prejudice. *See* Stipulation (dkt. 166) at 1-2. Counter-Plaintiffs now also move for summary judgment on various grounds. *See* Defs.' Mot. (dkt. 140) at 19-32.

## **Legal Standards**

The standard for summary judgment is well known – it is appropriate when "viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact." *See e.g.*, *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016) (internal quotation marks omitted). That statement, however, does not fully explain the role of the courts at summary judgment. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017). As to that, the Supreme Court has repeatedly noted that courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment. *See Brosseau v. Haugen*, 543 U.S. 194, 195 n.2 (2004) (*per curiam*); *see also Saucier v. Katz*, 533 U.S. 194, 201, 2001); *Hope v. Pelzer*, 536 U.S. 730, 733 n.1 (2002). These holdings simply reflect an application of the more general rule that a judge's task at summary judgment is not to weigh the evidence and determine the truth or falsity of any component of the matter at hand, but to determine whether or not there is a genuine issue for trial. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Of course, a logical corollary of these pronouncements is that a court must not make any credibility determinations in the course of such an inquiry. *See Anderson*, 477 U.S. at 255; *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (explaining that the standard for summary judgment "mirrors" the standard for judgment as a matter of law).

In short, all that is required to defeat summary judgment is simply evidence "such that a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor." *See Reza v. Pearce*, 806 F.3d 497, 505 (9th Cir. 2015) (internal quotation marks omitted); accord *Anderson*, 477 U.S. at 249 ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."). On

1   the other hand, the Supreme Court has made clear that "[if] the record taken as a whole could not
2   lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," and
3   summary judgment would be appropriate. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)
4   (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## Evidentiary Matters

Defendants have advanced a number of evidentiary objections: relating to certain statements appearing in Plaintiffs' summary judgment motion; relating to statements appearing in Plaintiff's counsel's declaration; and, relating to statements appearing in Plaintiff Tim Miranda's declaration. *See* Defs.' Objs. (dkt. 144). Plaintiffs have responded to Defendants objections. *See* Pls.' Opp. to Defs.' Objs. (dkt. 164). Having considered Defendants' evidentiary objections and Plaintiffs' responses thereto – Defendants' objections (dkt. 144) are, for present purposes, **OVERRULED**. Should this case proceed to trial, Defendants can renew their objections at the appropriate time.

Defendants have also filed objections (dkt. 153) to certain evidence on which Plaintiffs rely in opposing Defendants' summary judgment motion. In response to which, Plaintiffs have filed a motion to strike coupled with a request for sanctions (dkt. 156). As a result, Defendants withdrew these objections (*see* dkt. 157) and filed an opposition to Plaintiff's sanctions request (*see* dkt. 158). Additionally, Defendants also filed a request for judicial notice, asking the court to take notice of Defendants' withdrawal of its objections (*see* dkt. 159). Given that Defendants' objections (dkt. 153) were withdrawn (dkt. 157), Plaintiffs' motion (dkt. 158) to strike is **DENIED as moot**, and the request for sanctions is **DENIED**. Defendants' request (dkt. 159) for the court to take judicial notice of the fact that Defendants have withdrawn the objections in question is **GRANTED**.

## Plaintiffs' Motion for Summary Judgment (dkt. 139)

Plaintiffs ask the court to enter judgment in their favor: (1) on their breach of contract claim "because Defendants entered into a contract to raise heifers to be sold to plaintiffs organically, and signed affidavits that the land upon which the heifers . . . would be raised was organic but failed to raise the heifers organically"; (2) on their fraud claim "because Shelton

United States District Court
Northern District of California

signed affidavits stating that their heifers to be sold to plaintiffs would be raised organically, knowing that they could not be raised organically, and then failing to raise the heifers organically"; and, (3) that "this Court should enter judgment in favor of Plaintiffs on certain of Defendants' affirmative defenses which never had any basis in fact and, upon the conclusion of discovery, still have no basis in fact." *See* Pls.' Mot. (dkt. 139) at 3, 12-17. As to Plaintiffs' breach of contract claim, Plaintiffs contend that the facts supporting this claim are undisputed as to liability – that is, Plaintiffs submit that there is no dispute as to the existence of the verbal contract in question and as to its material terms regarding the alleged agreement to raise organic heifers and the alleged failure to do so. *See id*. at 12-14. In response, Defendants present evidence that indicates the existence of a genuine dispute as to Plaintiffs' breach of contract claim. *See* Defs.' Opp. (dkt. 143) at 7-10. For example, Defendant "Shelton expressly denies he ever represented he would be selling plaintiffs organic animals . . . Plaintiffs did not discuss organic management practices with Defendant Shelton or provide him with the guidelines for organic certification . . . [and] never actually explained 'Organic Management Practices' to Defendants Shelton, only noting 'to make sure that the animals were – had plenty of pasture, moving them around,  making sure they got bred, and if they needed supplemental feed it was hay that they were going to be raised off the farm' . . . [that Plaintiffs] never actually told Defendants what feed was prohibited . . . [and that] Plaintiff Tim Miranda does not [himself] know what 'organic management practices' means accord according to federal regulations or organic certifiers." *Id*. at 8-9. In reply, Plaintiffs contend that "Shelton does not deny that he breached the contract," and that instead, "he raises a series of tangential issues that are not material to the central issue: that he represented that the statements in his fraudulent affidavits were true." *See* Pls.' Reply (dkt.) at 5-8. In this vein, Plaintiffs add, *inter alia*, that "Shelton claims that he did not understand organic management practices; but he did." *Id*. at 6. In short, for the reasons stated by Defendants (*see* Defs.' Opp. (dkt. 143) at 7-10), the court finds that Defendants' denials (regardless of how believable they are in Plaintiffs' view) present genuinely disputed issues of material fact that must be resolved at trial in conjunction with the rendering of various credibility determinations, neither of which is the province of a judge in the course of summary judgment determinations. Thus, Plaintiffs' request

for summary judgment on their breach of contract claim is **DENIED**.

As to the fraud claim, Plaintiffs contend that they are entitled to summary judgment because of the notion that it is undisputed that the statements in the Farmer Affidavits (affirming that the heifers and the land on which they were raised satisfied certain undescribed organic standards and practices), signed by Shelton, are false. *See* Pls.' Mot. (dkt. 139) at 13-14. Plaintiffs contend that the following facts are undisputed: that Shelton admits that he knew the affidavits (*see id*. at 8-9) were false because the heifers were not raised organically and because Shelton allegedly had no intention of raising them in such a fashion; that Shelton only signed the affidavits to fraudulently induce Plaintiffs into entering the contract in question such as to secure higher prices for raising the heifers in question; that Plaintiffs justifiably relied on the allegedly false representations in the affidavits; and that Plaintiffs suffered damages as a result. *See id*. at 14. In response, Defendants submit that "the Shelton affidavits are truthful [as] [t]he plain language of the affidavits does not provide, as plaintiffs contend, [that] the animals procured by Shelton Livestock to plaintiffs would be 'organic'"; and, that the affidavits were fairly interpreted by Shelton in that they collectively provided that the animals would be raised on 'certifiable ground' in that "no pesticides or fertilizers were used on these properties." *See* Defs.' Opp. (dkt. 143) at 10-12. Defendants add that if Plaintiffs received any animals not raised on organic certifiable land, this was caused by Bybee who – acting as Plaintiffs' agent – "was to select animals to be shipped to Plaintiffs' operation in Texas." *Id*. at 11. For these reasons, as well as the other material disputed facts listed by Defendants (*see id*. at 10-12), the court finds that Defendants' assertions and denials are sufficient to survive summary judgment and that these disputes (and their attendant credibility determinations) are not suitable for summary determination and, instead, must be resolved at trial by evidence taken in the usual way. Accordingly, Plaintiffs' request for summary judgment on their fraud claim is **DENIED**.

Lastly, Plaintiffs seek summary judgment on a number of Defendants' affirmative defenses (to wit, 21 of the affirmative defenses) about which there are no genuine disputes due to the fact that the defenses were pleaded without any factual basis, and that upon completion of discovery, they continue to be unsupported by any factual basis. *See* Pls.' Mot. (dkt. 139) at 14-17.

Defendants respond to the effect that some – but not all – of their affirmative defenses are indeed supported by evidence. *See* Defs.' Mot. (dkt. 143) at 12-14. Given that Defendants' response only opposed Plaintiff's summary judgment arguments as to some of the pleaded affirmative defenses, Plaintiffs' motion for summary judgment is **GRANTED in part** as to Defendants': Eighth, Eleventh, Fourteenth, Fifteenth, Twentieth, Twenty-Fourth, Twenty-Sixth, Thirtieth, and Thirty-First affirmative defenses.

**Defendants' Motion for Summary Judgment (dkt. 139)**

Initially, as a threshold matter, Defendants ask the court to take judicial notice of certain federal regulations pertaining to the "National Organic Program," as well as certain statutes and judicial decisions from California and Tennessee to which Defendants have made reference. *See* Defs.' RFJN (dkt. 141). Plaintiffs have not presented any opposition to this request, and because these regulations, statutes, and court decisions are all suitable matters for judicial notice, Defendants' request (dkt. 141) is **GRANTED**. In seeking summary judgment on Plaintiffs' breach of contract, fraud, and negligence claims, Defendants request the application of Tennessee law because of the assertion that there are material differences between California and Tennessee law in evaluating the claims at bar and because Tennessee has the predominant interest in having its law applied to this case. *See* Defs.' Mot. (dkt. 140) at 16-19. As to breach of contract, Defendants note that unlike California, Tennessee law contains no provision that the sale of livestock is attended with an implied warranty that they are free from disease – which the court finds to be at least arguably material. *Id*. at 16-17. As to the fraud claim, Defendants note that California and Tennessee law differ as to the amount of punitive damages that may be awarded for fraud – which the court finds to be far less material. *Id*. at 17. As to negligence, Defendants contend that two courts in Tennessee have treated the sale of livestock with communicable disease (which infects the buyer's herd) as an issue under the law of warranties rather than negligence – which does not satisfy the materiality standard because Defendants only cite to two intermediate Tennessee appellate court decisions from 1927 and 1940 without establishing whether or not the approach taken by those courts is binding in that it precludes courts faced with such negligence claims from applying negligence standards to such claims. In any event, even giving Defendants the full

benefit of the doubt about the existence of differences between Tennessee and California law as to the three claims at bar, and their supposed materiality as asserted by Defendants, the court still finds that California clearly has the predominant interest in having its laws applied to the facts at hand because the overwhelming weight of the harms alleged in this case (to wit, allegedly diseased cattle being sold for importation into California such that their milk can be produced and sold in California) will be experienced by Californians. Accordingly, for that reason, as well as for the reasons stated by Plaintiffs (*see generally* Pls.' Mot. (dkt. 139); *see also* Pls.' Opp. (dkt. 145) at 11-14), Defendants' request to apply Tennessee law is **DENIED**.

Defendants then contend that they are entitled to summary judgment on Plaintiffs' breach of contract claim because "[t]he undisputed facts establish [that] no express warranties were made, nor would plaintiffs have been able to reasonably rely upon such warranties, and the law [in Tennessee] precludes implied warranties regarding the health of the subject heifers . . . [and that] Defendants are entitled to summary judgment because there is no triable issue as to Plaintiffs' breach of contract claim because there is undisputed evidence [that] the alleged warranties were not part of the agreement, Plaintiffs did not rely on any warranties alleged in the Complaint, and Plaintiffs waived rejection of the heifers by accepting shipments without timely notifying Shelton of nonconformity." *See* Defs.' Mot. (dkt. 140) at 19-23. Plaintiffs submit that Defendant Shelton made express warranties through the two affidavits mentioned above, and that Plaintiffs relied (to their detriment) on those warranties; Plaintiffs also assert (and the court agrees) that the implied warranties of merchantability and fitness for a particular purpose also apply due to the application of California law. *See* Pls.' Mot. (dkt. 145) at 14-18. Thus, for this reason, as well as based on Plaintiffs' other arguments (*see id.*) Defendants' request for summary judgment on Plaintiffs' breach of contract claim is **DENIED**.

Defendants alternatively request summary judgment on Plaintiffs' breach of contract claim based on the notion that the contract was supposedly illegal and unenforceable because its intended effect was for noncertified Defendants to manage organic animals. *See* Defs.' Mot. (dkt. 140) at 23-26. Here, Defendants' argument is rooted in the very substance of the Parties' dispute that forecloses summary judgment and compels the matter to proceed to trial. Where Plaintiffs

contend that Defendants committed themselves by verbal agreement to raise and breed organic heifers for sale to Plaintiffs, it is of no avail to Defendants to claim that their alleged failure to abide by the terms of the alleged agreement renders the agreement itself illegal and unenforceable, entitling them to summary judgment. For that reason, as well as the reasons expressed by Plaintiffs in explaining why the contract was not illegal (*see* Pls. Mot. (dkt. 145) at 18-20), Defendants request for summary judgment on the breach of contract claim is **DENIED**.

Defendants also move for summary judgment on Plaintiff's fraud claim because of the assertion that they were "not obligated to disclose facts to Plaintiffs regarding the subject heifers, nor were Plaintiffs reasonable in relying upon these." *Id*. at 26-28. Plaintiffs respond to the effect that Defendants' express representations in the two affidavits in question turned out to be false, that Defendants knew they were false, and that "Plaintiffs' reliance [thereupon] was justified as it was supported by an inspection of the land, that, purportedly was where the heifers were to have grazed[,] [and] Miranda was damaged by paying higher prices for organic heifers that were not, in fact, organic." *See* Pls.' Opp. (dkt. 145) at 21. Plaintiffs also catalog a number of allegedly fraudulent omissions they attribute to Defendants in this regard. *See id*. at 21-22. As mentioned above, these are classic examples of disputed facts that must be resolved at trial in that their resolution hinges in large part on credibility determinations. Accordingly, for this reason, as well as those asserted by Plaintiffs (*see id*. at 21-22), Defendants' request for summary judgment on Plaintiffs' fraud claim is **DENIED**.

Plaintiffs' negligence claim alleges that Defendants breached relevant standards of care in the raising of the heifers in question, as a result of which Plaintiffs were damaged through the infecting of their herds, through having to dump extremely large amounts of milk, through the need to slaughter a large number of cattle, and through Plaintiffs losing the organic quality required for their milk production agreements. *See* Compl. (dkt. 1) at 13. Defendants move for summary judgment on this claim based on the argument that the economic loss rule bars Plaintiffs' recovery under a negligence theory because of the notion that "where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic losses.'" *See* Defs.' Mot. (dkt. 140) at 28-

30. However, as Plaintiffs' point out, "[t]he damages caused by Shelton to the heifers he shipped also caused losses to other property outside the scope of the contract . . . [t]hat property includes heifers not purchased by Miranda from Shelton that were also infected and the milk lost as a result of the infection brought into the herd by Shelton." Pls. Opp. (dkt. 145) at 22-23. Defendants also contend that Plaintiffs have offered no expert testimony to establish an independent duty to comply with organic certification requirements (Defs.' Mot. (dkt. 140) at 30-31); that compliance with organic certification requirements has no causal relationship to Plaintiffs' alleged injuries (*id*. at 31); and, that Defendants cannot owe a duty of care to Plaintiffs to conform to the requirements necessary to maintain an organic certification because Defendants are not a certified organic operation (*id*. at 32). As mentioned above, Defendants arguments about not being a certified organic operation are circular and they are intertwined with the Parties' disputed assertions as to the nature and scope of their verbal agreement; furthermore, Plaintiffs' assertion that Defendant *knew* that his herd was afflicted by bacterial infection "and he shipped heifers to Miranda anyway, making this much more than a mere fraudulent inducement claim – it is an intentional tort (or gross negligence) that falls outside of the parties' contractual expectations." *See* Pls. Opp. (dkt. 145) at 22. The court agrees with Plaintiffs that they have shown enough of a genuine dispute as to material facts such as to survive summary judgment on their negligence claim. Accordingly, Defendants' request for summary judgment on Plaintiffs' negligence claim is **DENIED**.

## CONCLUSION

As detailed herein, Plaintiffs' Motion for Partial Summary Judgment (dkt. 139) is **GRANTED in part** as to the subset of Defendants' affirmative defenses described above. In other respects, Plaintiffs' motion is **DENIED**. Defendants' Motion for Summary Judgment (dkt. 140) is **DENIED** in its entirety. Plaintiffs' Motion to Strike and Request for Sanctions (dkt. 156) is likewise **DENIED**, and the Parties' various evidentiary objections are **OVERRULED**.

**IT IS SO ORDERED.**

Dated: June 6, 2022

ROBERT M. ILLMAN
United States Magistrate Judge

10